```
              UNITED STATES DISTRICT COURT
                DISTRICT OF NEW HAMPSHIRE
```

Edwin Santiago

    v.                                                Civil No. 11-cv-537-JL
                                                            Opinion No. 2013 DNH 048

Michael J. Astrue, Commissioner,
Social Security Administration

**SUMMARY ORDER**

Edwin Santiago has appealed the Social Security Administration's denial of his applications for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI").  An administrative law judge at the SSA ("ALJ") ruled that, despite Santiago's severe impairments (morbid obesity and sleep apnea), he retains the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy, and, as a result, is not disabled.  See 20 C.F.R. §§ 404.1505(a), 416.905(a).  The Appeals Council later denied Santiago's request for review of the ALJ's decision, see id. § 404.968(a), with the result that the ALJ's decision became the SSA's final decision on Santiago's application, see id. § 404.981.  Santiago appealed the decision to this court, which has jurisdiction under 42 U.S.C. § 405(g) (Social Security).

Santiago has filed a motion to reverse the decision.  See L.R. 9.1(b)(1).  He argues that the ALJ made four errors in


concluding that, despite Santiago's morbid obesity and sleep apnea, he had the RFC to perform jobs that exist in significant numbers in the national economy:

> (1) the ALJ erroneously found Santiago's other claimed impairments, including cellulitis, venous statis, and hernia, to be non-severe;
>
> (2) the ALJ improperly gave only some weight to the opinions of Santiago's treating physician, but gave great weight to the opinions of a consulting physician who did not treat Santiago;
>
> (3) the ALJ gave very limited weight to the opinion of a psychologist who examined Santiago; and
>
> (4) the ALJ failed to call on a vocational expert in deciding that Santiago could perform jobs that existed in significant numbers in the national economy.

The Commissioner of the SSA has cross-moved for an order affirming the ALJ's decision. See L.R. 9.1(d). The Commissioner argues that the ALF:

> (1) supportably found that a number of Santiago's claimed impairments were non-severe and, in any event, considered those claimed impairments in assessing Santiago's RFC;
>
> (2) properly rejected the opinions of Santiago's treating physician, to the extent they were inconsistent with the opinions of the consulting physician, because the consulting physician's opinions were more consistent with the evidence of record;
>
> (3) properly rejected the opinions of the psychiatrist as inconsistent with the evidence of record; and
>
> (4) properly relied on the Medical Vocational Rules, see 20 C.F.R. § 404, Subp. B, App. 2, rather than a vocational expert, in finding that Santiago could

perform jobs that existed in significant numbers in the national economy.

As explained below, the court agrees with the Commissioner, and therefore grants his motion to affirm (and denies Santiago's motion to reverse) the ALJ's decision.

As noted at the outset, the ALJ found that Santiago suffered from two severe impairments, morbid obesity and constructive sleep apnea. While Santiago had also been "diagnosed with recurring cellulitis of the legs, venous statis, and recurrent hernia during the period" of his claimed disability, as the ALJ noted, he did "not find any of these conditions to be severe."

With exceptions not relevant here, to be eligible for either SSDI or SSI benefits, a claimant must have a severe impairment, 20 C.F.R. §§ 416.905, 404.1505(a), i.e., one that, "[u]nless [it] is expected to result in death, . . . must have lasted or must be expected to last for a continuous period of at least 12 months," id. §§ 404.909, 404.1509. In finding that Santiago's cellulitis, venous statis, and hernia were not severe, the ALJ found that "none of these conditions caused more than mild work limitations for an entire 12-month period." Specifically, the ALJ found that (a) Santiago "suffered several bouts of cellulitis, but each episode was treated and generally cleared before another arose;" (b) Santiago "underwent repair of [a] hernia in March of 2010 and

3

then again in March of 2011, but made few complaints related to it in between;" and (c) Santiago's "venous statis and later diagnosed blood clots seem to have been controlled with medication, and did not prevent him from walking for exercise."

Without challenging any of these subsidiary findings, Santiago maintains that the ALJ nevertheless erred in concluding that Santiago's cellulitis, hernia, and venous statis were not severe. Relying on an Eleventh Circuit case, Thornton v. Astrue, 356 Fed. Appx. 243 (11th Cir. 2009), for the proposition that "recurrent conditions can be disabling," Santiago argues that, "[i]nasmuch as recurrent problems can be disabling, a fortiori they can satisfy the de minimis severity standard." If Santiago is arguing that, simply because a condition is recurrent, it is necessarily severe, then his logic is obviously flawed. (To take but one example, acne can be "recurrent," but only in exceedingly rare cases would anyone argue it is "severe" so as to qualify as a disabling impairment.) And if Santiago is arguing that, taking the recurrent nature of his cellulitis, hernia, and venous statis into account, those conditions (or any of them) lasted for at least 12 months, he has not pointed to anything in the record that would have required the ALJ to reach that conclusion.[1]

---

[1] Santiago asserts that, as a result of these conditions, he required "frequent" medical care, including hospitalizations,

4

In any event, because the ALJ found that Santiago suffered from severe impairments in the form of morbid obesity and sleep apnea, whether the ALJ should have found that Santiago also suffered from additional severe impairments is immaterial. As the Commissioner points out, once an ALJ identifies one severe impairment, he must "consider the limiting effects of all [the claimant's impairments], even those that are not severe." 20 C.F.R. § 404.1545(e). That is precisely what the ALJ did here, explaining that, "[w]hile he [did] not find [Santiago's cellulitis, hernia, and venous statis] to be severe . . . they are noted to be caused by or related to [his] obesity"--which was, of course, an impairment that the ALJ did find to be severe. The ALJ did not err in his treatment of Santiago's cellulitis, hernia, and venous statis as non-severe impairments. See Pompa v. Comm'r of Soc. Sec., 73 Fed. App'x 801, 803 (6th Cir. 2003).

The ALJ found that, despite Santiago's impairments, he retained the RFC to perform less than the full range of light work. "[L]ight work . . . requires a good deal of walking or standing, or . . . involves sitting most of the time with some pushing and pulling with arm or leg controls." 20 C.F.R. §§

---

between December 2009 and March 2010. But that period is considerably shorter than 12 months and, again, Santiago has pointed to nothing in the record suggesting that his need for such frequent medical care persisted beyond that point.

5

404.1567(b), 416.967(b). The ALJ found that Santiago "can stand or walk for at least two hours, and sit for about 6 hours during an 8-hour workday. He can perform all postural activities on an occasional basis."

As support for this finding, the ALJ relied on the opinions of Jonathan Jaffe, M.D., a medical consultant who, based on certain of Santiago's medical records, completed an RFC assessment in March 2010. The ALJ gave Dr. Jaffe's opinions "great weight, as they are generally consistent with the evidence on record," including Santiago's "ability to walk for exercise." Indeed, the ALJ noted, after Dr. Jaffe had completed the assessment, Santiago "took up walking for exercise once more, just as he had been doing at the time" of the assessment.

Dr. Jaffe's opinions were also consistent, in large part, with an RFC questionnaire completed by Santiago's treating physician, Dr. Boris Naprta, in April 2010. Dr. Naprta concluded that, during an 8-hour workday, Santiago "could stand or walk for about 4 hours" (an even longer time than Dr. Jaffe had found); could sit for at least 6 hours (just as Dr. Jaffe had found); and could occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds (also just as Dr. Jaffe had found).

But Dr. Naprta also opined that Santiago suffered from additional limitations, beyond those specifically identified by

6

Dr. Jaffe.  Dr. Naprta concluded that Santiago "would need to take two to three unscheduled breaks during the workday for five to ten minutes each;" that, with prolonged sitting, his legs should be elevated above horizontal during 20-30% of an 8-hour workday; and that he could walk no more than one city block "without rest or severe pain."  Dr. Naprta also opined that Santiago "would need to be absent about 4 days per month."  The ALJ's decision sets forth these opinions, then states that they "are given some weight, as they are somewhat consistent with the medical evidence on record.  However, [the ALJ] finds little to no support for the alleged number of missed days."

Santiago argues that the ALJ erred by not giving controlling weight to the opinions of Dr. Naprta, Santiago's treating physician.  "If [the ALJ] find[s] that a treating source's opinion on the issue(s) of the nature and the severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [his] case record, [the ALJ] will give it controlling weight."  20 C.F.R. § 416.927(c)(2).[2]

---

[2] By its terms, this rule does not apply to "opinions on issues that are reserved to the Commissioner because they are administrative findings that are dispositive of a case," including "statement[s] by a medical source that [the claimant]

Here, as just discussed, the ALJ did not give controlling weight to Dr. Naprta's opinions. The ALJ found those as to Santiago's RFC only "somewhat consistent with the medical evidence on record" and "little or no support" in the record for Dr. Naprta's opinion that Santiago would need to be absent from work 4 days each month. This approach would appear entirely in accord with § 416.927(c)(2) which, again, requires an ALJ to give controlling weight to a treating source's opinions only insofar as they are "well-supported."

Santiago argues that, in declining to give controlling weight to Dr. Naprta's opinions, the ALJ "fail[ed] to articulate any reasoning susceptible to review." But an ALJ need provide only "'good reasons in his decision for the weight he gave to the [medical] opinions,'" even when those opinions come from a

---

is 'disabled' or 'unable to work.'" 20 C.F.R. § 416.927(d)(1). Thus, Dr. Naprta's opinions that Santiago was "medically disabled" or "unable to work" on February 8, 2010 and August 26, 2010 are entitled "no special significance." Id. § 416.927(d)(3). While, as Santiago points out, "a doctor's opinion as to whether a claimant is disabled must not be disregarded," Lord v. Apfel, 114 F. Supp. 2d 3, 15 (D.N.H. 2000) (quotation marks omitted), the ALJ did not simply ignore Dr. Naprta's opinions that Santiago was at times "disabled" or "unable to work." To the contrary, the ALJ noted that Dr. Naprta had stated these opinions "without regard to any specific functional limitations" so that they "did not assist [the ALJ] in determining disability under the regulations." The ALJ did not err in giving only "very limited weight" to Dr. Naprta's opinions that Santiago was "disabled" on two particular dates.

treating source. Chapin v. Astrue, 2012 DNH 177, 9 (quoting Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007)). The ALJ did that here. As this court reads the ALJ's decision, he found Dr. Naprta's opinions persuasive insofar as they were consistent with Dr. Jaffe's (which, as already noted, were based on specific entries in Santiago's medical records) but unpersuasive insofar as they were not. In other words, as the ALJ stated, Dr. Naprta's opinions were "somewhat consistent with the medical evidence on record." And the ALJ's rejection of Dr. Naprta's opinion as to Santiago's anticipated absences from work, because it had "little or no support" in the record, is self-explanatory.[3]

Indeed, while Santiago argues in his motion that the ALJ erroneously failed to give controlling weight to Dr. Naprta's opinions as to certain of Santiago's functional limitations (i.e., he could walk no more than a block without rest, he would need to elevate his legs for 20-30% of each workday, and he would need to miss 4 days of work each month), he does not identify any

---

[3]Santiago attacks the ALJ's observation that, despite Dr. Naprta's opinion that Santiago would need to miss several days of work each month, he "appears to be able to make all of his medical appointments." Whatever the force of this reasoning, it does not change the fact that there is indeed "little or no support" in the record for Dr. Naprta's opinion as to how many days of work Santiago would need to miss each month.

9

evidence in the record that supports these opinions.[4]  Nor does any support for those opinions appear in their source, Dr. Naprta's RFC assessment.  That assessment, completed on a form provided by Santiago's counsel, consists largely of checked "yes" or "no" responses to a series of questions about Santiago's functional limitations--without explaining those answers by reference to Santiago's medical history or otherwise.[5]

   The ALJ did not err, then, in refusing to give controlling weight to Dr. Naprta's opinions as to Santiago's functional limitations, insofar as those opinions diverged from Dr. Jaffe's and were otherwise unsupported by Santiago's medical records.  As this court has recognized, an ALJ can rely "exclusively on the

---

   [4]Even in his reply memorandum, Santiago attempts to point to record support for only one of the opinions he accuses the ALJ of improperly rejecting, i.e., that Santiago would need to elevate his legs for 20-30% of each workday.  This court ordinarily ignores arguments raised for the first time in reply.  See Doe v. Friendfinder, 540 F. Supp. 2d 288, 303 n.16 (D.N.H. 2008). Regardless, even the records relied upon in the reply would not have required the ALJ to accept, as "well-supported," Dr. Naprta's opinion about Santiago's need to elevate his legs.

   [5]Santiago nevertheless criticizes Dr. Jaffe's RFC assessment as "essentially devoid of commentary and medical reasoning" and including only "sparse notes summarizing a few records." Because, as just noted, the same criticisms apply--and with even greater force--to Dr. Naprta's RFC assessment, the ALJ did not err in crediting Dr. Jaffe's.  Cf. Chapin, 2012 DNH 177, 11-12 (upholding ALJ's choice between the opinions of two medical sources, neither of whom had reviewed all of claimant's medical records).

assessments of non-testifying, non-examining physicians" in adjudicating a claimant's disability, and conflicts between those assessments and other medical testimony "are for the ALJ to resolve." Morin v. Astrue, 2011 DNH 091, 9-10 (citing Berrios Lopez v. Sec'y of HHS, 951 F.2d 427, 431-32 (1st Cir. 1991) and Tremblay v. Sec'y of HHS, 676 F.2d 11, 12 (1st Cir. 1982)). Furthermore, "[t]he ALJ decision to resolve that conflict against the claimant should be affirmed if "'that conclusion has substantial support in the record.'" Id. (quoting Tremblay, 676 F.2d at 12). Contrary to Santiago's suggestion, "substantial evidence" in this context means simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). As just discussed, there is substantial evidence supporting the ALJ's decision to reject Dr. Naprta's opinions as to Santiago's functional limitations insofar as those opinions were inconsistent with Dr. Jaffe's. If nothing else, unlike Dr. Naprta, Dr. Jaffe buttressed his opinions with references to Santiago's medical records.

There is likewise substantial evidence supporting the ALJ's decision to give "very limited weight" to the opinions of a psychologist who examined Santiago in June 2010, Jessica Stern. As the ALJ noted, Stern concluded that Santiago "exhibit[ed]

11

moderate limitations in all functional areas." These included "task performance," which Stern based on Santiago's "reports [that] he has some difficulty sustaining attention and forgets to finish what he starts," as well as that, during the examination, "it was clear he had trouble maintaining attention and understanding instructions." Stern observed that Santiago's "attention and concentration are poor."

The ALJ, however, found that Stern's opinions as to Santiago's functional limitations were "not supported by the medical evidence on record." The ALJ noted that Santiago "made very few complaints of mental health symptoms during the period [of his claimed disability], and never sought counseling or treatment," as well as that Santiago "made no mention of mental health limitations at the hearing," where he "was easily able to answer questions . . . and was able to offer a fairly detailed work and medical history."

Santiago argues that the ALJ erred through this "substitution, based on interaction at a brief hearing, of his own opinion about [] Santiago's mental capabilities for that of a trained expert who conducted a psychological examination." But, in giving very limited weight to Stern's opinions, the ALJ did not rely solely on his interaction with Santiago at the hearing: he also relied on the lack of support in Santiago's medical

records for any limitations in his mental functioning.  Santiago fails (as he did in trying to attack the ALJ's decision not to adopt Dr. Naprta's opinions in full) to identify anything in his medical records that would have required the ALJ to reach a different conclusion.[6]  So, as just discussed with regard to Dr. Naprta's opinions as to certain of Santiago's physical limitations, the ALJ properly relied on the lack of support in Santiago's medical records in rejecting Stern's opinions as to his mental limitations.

Contrary to Santiago's argument, the ALJ also properly relied on the fact that Santiago had never mentioned such limitations to his treating providers, see, e.g., Dupuis v. Sec'y of HHS, 869 F.2d 622, 624 (1st Cir. 1989), or, for that matter, at the hearing itself--at least where, as here, Santiago was represented by counsel, see Faria v. Comm'r of Soc. Sec., 1998 WL 1085810, at *1 (1st Cir. Oct. 2, 1998).  Substantial evidence supported the ALJ's decision to give only very limited weight to Stern's opinions as to Santiago's functional limitations.

---

[6]Santiago points out that, both in a January 2010 treatment note and again in the April 2010 RFC assessment, Dr. Naprta stated that Santiago suffered from "depression."  Dr. Naprta did not, however, identify any functional limitations that Santiago's depression imposed upon him, so these records do not, contrary to Santiago's argument, support Stern's view that he was moderately limited in every (or any) area of mental functioning.

After crediting Dr. Jaffe's opinions (rather than the contrary ones of Dr. Naprta or Stern) as to Santiago's functional limitations, the ALJ found that Santiago retained the RFC to do less than the full range of light work, as already noted.  The ALJ proceeded to rule that, considering this RFC, together with Santiago's age, education and work experience, there are jobs that exist in significant numbers in the national economy that he can perform.  Santiago argues that the ALJ erred in reaching this conclusion without the benefit of testimony from a vocational expert.  The Commissioner, however, argues that ALJ properly relied solely on the Medical-Vocational Rules in reaching this conclusion.

The Commissioner bears the burden of proving that a claimant has the RFC to perform jobs that exist in significant numbers in the national economy.  See 20 C.F.R. § 404.1560(c)(2).  In meeting this burden, the Commissioner can rely solely on the Medical-Vocational Rules, also known as "the Grid," unless the "claimant's nonexertional impairment significantly affects [his] ability to perform the full range of jobs at the appropriate strength level." Heggarty v. Sullivan, 947 F.2d 990, 996 (1st Cir. 1991) (quotation marks omitted).  Here, in relying solely on the Grid, the ALJ found that this was not the case, i.e., that Santiago's "additional limitations have little or no effect on

the occupational base of unskilled light work."  Santiago argues that this finding lacks substantial support in the record.

Specifically, Santiago argues that his ability to "only stand and walk for two hours in an 8-hour workday" in fact significantly limits his ability to perform the full range of light work.  To support this argument, he relies on a passage from a Social Security ruling that "a job is in the [light work] category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs."  SSR 83-10, Titles II and XVI:  Determining Capability to Do Other Work--The Medical-Vocational Rules of Appendix 2, 1983 WL 31251, at *5 (S.S.A. 1983).  As this court has previously noted, however, SSR 83-10 itself "recognizes that not all light work requires a good deal of walking or standing, and that a job may fall into the category of light work 'when it involves sitting most of the time.'"  Dubois v. Astrue, 2012 DNH 109, at 15 (quoting SSR 83-10, 1983 WL 31251, at *5).  Thus, this court reasoned, SSR 83-10 notwithstanding, an ALJ's finding that the claimant could stand or walk a maximum of three hours per day was not "necessarily inconsistent" with the ALJ's finding that the claimant could perform less than the full range of light work.  Id. at 13; see also Putnam v. Astrue, 2011 DNH 123, 10-11

(reaching the same conclusion where the ALJ found the claimant could stand and walk up to one hour per day).

Likewise, an ALJ's finding (like the one here) that a claimant "can stand or walk for <u>at least</u> two hours . . . during an 8-hour workday" (emphasis added) does not compel the conclusion that he is significantly limited in his ability to perform the full range of light work.  This is particularly true where the claimant's treating physician opines that the claimant can in fact stand or walk for about <u>4 hours</u> per day (as Dr. Naprta did here) and, as the ALJ specifically noted, there was evidence that the claimant walked for exercise.

There was substantial evidence to support the ALJ's finding that Santiago's nonexertional impairment did not significantly limit his ability to perform the full range of light work.[7]  So the ALJ properly relied on the Grid, and the Grid alone, in concluding that jobs that exist in significant numbers in the national economy that Santiago can perform.

---

[7]Santiago also argues that, in relying solely on the Grid, the ALJ disregarded the functional limitations that Stern, the psychologist, had identified.  As just discussed, however, the ALJ gave very little weight to Stern's opinion, and his decision to do so was supported by substantial evidence.

16

Based on the foregoing, Santiago's motion to reverse the ALJ's decision[8] is DENIED, and the Commissioner's motion to affirm that decision[9] is GRANTED. See 42 U.S.C. § 405(g). The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

Joseph N. Laplante
United States District Judge

Dated: March 29, 2013

cc: Raymond J. Kelly, Esq.
    T. David Plourde, AUSA

---

[8]Document no. 9.

[9]Document no. 12.

17